1
2
3
4
5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LORI SHIPMAN,

    Plaintiff,

    v.

NANCY A. BERRYHILL
(PREVIOUSLY COLVIN),
Acting Commissioner of Social
Security, [1]

    Defendant.

No.  2:16-cv-114-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**

    Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 17 & 18. Plaintiff Lori Shipman brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C §§ 401-434.  After reviewing the administrative record and

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMADING FOR FURTHER PROCEEDINGS~ 1**

briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** for further proceedings.

## I.    Jurisdiction

Ms. Shipman filed an application for Disability Insurance Benefits under Title II of the Social Security Act on May 29, 2012. AR 192-93. Her alleged onset date was March 1, 2010, AR 192, but the relevant period for this claim began May 18, 2011.[2] AR 18.  Her application was initially denied on September 11, 2012, AR 130-32, and on reconsideration on December 7, 2012, AR 135-36.

A hearing with Administrative Law Judge ("ALJ") R.J. Payne occurred on June 12, 2014. AR 35-74. On August 5, 2014, ALJ Payne issued a decision finding Ms. Shipman ineligible for disability benefits under Title II. AR 18-29. The Appeals Council denied Ms. Shipman's request for review on February 5, 2016. AR 1-5.

Ms. Shipman timely filed the present action challenging the denial of benefits on April 7, 2016. ECF No. 5. Accordingly, Ms. Shipman's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

---

[2] Ms. Shipman previously filed an application on October 28, 2010, which was denied initially on February 23, 2011, and on reconsideration May 17, 2011. AR 18. The ALJ determined that there was no good cause to reopen this earlier application, a finding which was not challenged by Ms. Shipman in this case, thus the Court accepts the findings of the ALJ and determines the relevant period for this claim began May 18, 2011. *Id.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS~ 2**

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§ 404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f)

1  & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant

2  is not entitled to disability benefits and the inquiry ends.  *Id.*

3      Step five shifts the burden to the Commissioner to prove that the claimant is

4  able to perform other work in the national economy, taking into account the

5  claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

6  404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this

7  burden, the Commissioner must establish that (1) the claimant is capable of

8  performing other work; and (2) such work exists in "significant numbers in the

9  national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,*

10  676 F.3d 1203, 1206 (9th Cir. 2012).

11              **III.    Standard of Review**

12      A district court's review of a final decision of the Commissioner is governed

13  by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the

14  Commissioner's decision will be disturbed "only if it is not supported by

15  substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144,

16  1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than

17  a mere scintilla but less than a preponderance; it is such relevant evidence as a

18  reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

19  *Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d

20  1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMADING FOR FURTHER PROCEEDINGS~ 5**

1    whether the Commissioner's findings are supported by substantial evidence, "a

2    reviewing court must consider the entire record as a whole and may not affirm

3    simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc.*

4    *Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

5    F.2d 498, 501 (9th Cir. 1989)).

6          In reviewing a denial of benefits, a district court may not substitute its

7    judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

8    1992).  If the evidence in the record "is susceptible to more than one rational

9    interpretation, [the court] must uphold the ALJ's findings if they are supported by

10   inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

11   1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

12   2002) (if the "evidence is susceptible to more than one rational interpretation, one

13   of which supports the ALJ's decision, the conclusion must be upheld").  Moreover,

14   a district court "may not reverse an ALJ's decision on account of an error that is

15   harmless." *Molina*, 674 F.3d at 1111.  An error is harmless "where it is

16   inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115.

17   The burden of showing that an error is harmful generally falls upon the party

18   appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

19   //

20   //

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMADING FOR FURTHER PROCEEDINGS~ 6**

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here.  Ms. Shipman was 59 years old at the time of her hearing. AR 25. She has at least a high school education and previously worked as a cashier. *Id.* Ms. Shipman has alleged numerous mental and physical impairments, including a heart murmur, irregular heartbeat, lipoma tumors in her back and knees, diabetes, lumbar degenerative disease, arthritis, asthma, obesity, bilateral hip degenerative disease, and depression. AR 18-29.

### V.    The ALJ's Findings

The ALJ determined that Ms. Shipman was not under a disability within the meaning of the Act from May 18, 2011, through the date of the decision. AR 29.

**At step one**, the ALJ found that Ms. Shipman had not engaged in substantial gainful activity since May 18, 2011 (citing 20 C.F.R. § 404.1571 *et seq.*). AR 20.

**At step two**, the ALJ found Ms. Shipman had the following severe impairments: lumbar degenerative disc disease, bilateral hip degenerative arthritis, asthma, and obesity (citing 20 C.F.R. § 404.1520(c)). AR 20.

At **step three**, the ALJ found that Ms. Shipman did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 683-84.

At **step four**, the ALJ found Ms. Shipman had the following residual function capacity: She can "perform light work as defiend in 20 CFR 404.1567(b) except that [she] can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand/walk two hours at a time for a total of six hours in an eight-hour workday, and sit two hours at a time for a total of six hours in an eight-hour workday. [Ms. Shipman] is limited to occasional postural activities with the exception of frequent balancing and no climbing of ladders, ropes, or scaffolds. [She] should avoid concentrated exposure to extreme cold, extreme heat, pulmonary irritants (due to asthma), and hazards such as unprotected heights and heavy machinery (due to the effects of Hydrocodone for back pain)." AR 24-25.

The ALJ then determined that Ms. Shipman is capable of performing her past relevant work as a cashier as actually and generally performed. AR 29.

The ALJ did not progress to **step five** for alternative findings.

## VI.    Issues for Review

Ms. Shipman argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) making a finding at step four that is contrary to law and not supported by substantial evidence; (2) finding Ms. Shipman's mental impairments non-severe at step two and failing to account for limitations stemming from them in the

residual functional capacity finding; and (3) failing to account for Ms. Shipman's

work history in the assessment of her credibility. ECF No. 17 at 4.

## VII.   Discussion

### A. Ms. Shipman was able to perform her past relevant work as it is generally performed.

The ALJ found at step four that Ms. Shipman was able to perform her past

work as a cashier, specifically Cashier II, classified as light duty unskilled work.

AR 29. ALJ Payne made the finding that Ms. Shipman could perform this work as

actually and generally performed. *Id.* The ALJ compared the description of the job

as Ms. Shipman gave it, as well as the description as it is performed in the national

economy to support this determination. *Id.* Further, the ALJ was influenced by the

state agency evaluation that found Ms. Shipman able to perform her past relevant

work. AR 120.

While the burden at step four still lies with Ms. Shipman to demonstrate that

she cannot perform past relevant work, the ALJ still must "make the requisite

factual findings" to support the conclusion. *Pinto v. Massanari*, 249 F.3d 840, 844

(9th Cir. 2001). To do so, the ALJ must compare the residual functional capacity

and the physical and mental demands of the past relevant work. *Id.* at 845; 20

C.F.R. § 404.1520(f). ALJs may use the "actually performed test" or the "generally

performed" test. *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir, 2016). Although

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMADING FOR FURTHER PROCEEDINGS~ 9**

1   brief, it appears the ALJ considered both how Ms. Shipman's prior work was

2   actually and generally performed.

3        The ALJ based the determination of how Ms. Shipman's job was actually

4   performed on her description of the job. ALJ Payne noted Ms. Shipman's

5   "description of this job is consistent with the requirement of light level work." AR

6   29. This alone, however, should not have ended the inquiry because her residual

7   functional capacity included limitations beyond simply light work. Specifically,

8   her residual functional capacity requires Ms. Shipman to "sit two hours at a time

9   for a total of six hours in an eight-day workday."[3] AR 24.

10       The ALJ relied on Ms. Shipman's self-reporting to determine how her job

11   was actually performed. In her disability report dated June 28, 2012, Ms. Shipman

12   described her prior job as a cashier with LQW Traders as requiring walking and

13   standing for eight hours and sitting for zero hours. AR 249. This cannot account

14   for at least two hours per day of sitting required by her residual functional capacity.

15   Thus, the Court finds that the ALJ erred as to determining that Ms. Shipman was

16   able to perform her past relevant work as it was actually performed; however, this

17   is only reversible error if the ALJ also erred in determining that Ms. Shipman is

18   able to do her past relevant work as it is generally performed. *See Pinto*, 249 F.3d

19

20   [3] This also does not include any qualifications for mental limitations that
     may affect the actual ability to perform this job, which was in error that is
     detailed later in this order.

at 845 ("We have never required explicit findings at step four regarding a

claimant's past relevant work both as generally performed *and* as actually

performed." (emphasis in original)).

      The generally performed test is designed for situations in which the

claimant's past job was more demanding than industry standards. *Stacy*, 825 F.3d

at 569. "The best source for how a job is generally performed is usually the

Dictionary of Occupational Titles" ("DOT"). *Pinto*, 249 F.3d at 845. The ALJ

refers to the description in the DOT which does not facially require or preclude

periods of sitting. AR 29. The ALJ did not call a vocational expert to discuss any

variations from the description in the DOT.

      The ALJ did not rely solely on the DOT description in making this

determination. ALJ Payne also cites to the finding by a state agency official that

Ms. Shipman was capable of performing the DOT Title of Cashier II as "generally

performed in the nationally economy." AR 120. While the ALJ would have been

better able to demonstrate their findings by calling a vocational expert, this state

agency finding is additional evidence in the record that supports the determination.

While Ms. Shipman's job could not actually be performed under the restrictions set

forth in her residual functional capacity, the DOT description and the record

support the ALJ's finding that it may generally performed as such. This is the

purpose for having two separate tests. *See Stacy,* 825 F.3d at 569.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT AND REMADING FOR FURTHER PROCEEDINGS~ 11**

1    Nevertheless, even if Ms. Shipman could perform her past relevant work as

2    generally performed based on the residual functional capacity assessed to her, the

3    record demonstrates error in the calculation of her residual functional capacity. Ms.

4    Shipman's documented mental impairments were not properly considered by the

5    ALJ, which resulted in reversible error.

6    **B. The ALJ erred at failing to determine Ms. Shipman's mental**

7    **impairments were severe at step two and this error was not harmless**

8    **because they were not accounted for in the residual functional capacity.**

9    At step two in the five-step sequential evaluation for Social Security cases,

10   the ALJ must determine whether a claimant has a medically severe impairment or

11   combination of impairments. An impairment is found to be not severe "when

12   medical evidence establishes only a slight abnormality or a combination of slight

13   abnormalities which would have no more than a minimal effect on an individual's

14   ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting

15   SSR 85-28). Step two is generally "a de minimis screening device [used] to

16   dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a

17   medically severe impairment only when the conclusion is clearly established by the

18   record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v.*

19   *Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

20

Under step 2, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). These include, among others, the ability to respond appropriately to supervision, co-workers, and usual work situations. *Id*. (citing 20 C.F.R. § 404.1521(b)(5)).

The ALJ found Ms. Shipman's depression to be non-severe. AR 23.  The ALJ relied in large part on a state disability determination that found Ms. Shipman's affective disorder (described by the ALJ as depression) to be non-severe and caused only mild restrictions. AR 116. In addition, the ALJ based the findings on a lack of consistent treatment for mental health symptoms, a lack of significant limitations detailed in the record, and mental status examinations within normal limits. AR 23.

The ALJ did not consider at step two the opinion of Dr. Jay Toews, Ed.D., an examining psychologist who consulted with Ms. Shipman on January 31, 2011. The ALJ did give "little to some weight" to the opinion at step four. AR 28. The ALJ reasoned that because Dr. Toews's evaluation occurred prior to the relevant period, it may not adequately reflect Ms. Shipman's mental functioning during that period. *Id.* This is a reasonable interpretation.

A state agency determination in February 2011 found Ms. Shipman to have moderate difficulties in maintaining concentration, persistence, or pace at all. AR

79. Moderate limitations should be accounted for in the residual functional

capacity, so even if this was incorrectly omitted at step two, it would not be

harmless if it wasn't accounted for in the residual functional capacity

determination. *See Lewis,* 498 F.3d at 310. These moderate limitations, however,

were found also outside the relevant time period. AR 79, 90-91. Later evaluations

that occurred within the relevant time period resulted in findings of only mild

limitations. AR 104, 116.

While some pieces of the record show an improvement during the relevant

time period, there are several parts of the record that shows contrary information,

and the ALJ does not address this.

The ALJ broadly states that Ms. Shipman's mental status examinations were

within normal limits, but this is contradicted by the record. Just days prior to the

relevant period, Ms. Shipman was seen at Community Health Association of

Spokane ("CHAS"), and she was recorded as having "moderately severe

depression." AR 398. Likewise, in her physical exam, her level of distress was

noted as anxious and her overall appearance as depressed. *Id.* On August 30, 2011,

Ms. Shipman was seen by Dr. Robert H. Laugen, M.D., who noted she was

"positive for spells of depression." AR 376. At another visit to CHAS on January

23, 2012, the provider noted that Ms. Shipman was having trouble with side effects

of her anti-depressant and that she had a "meltdown" in Walmart. AR 411. At this

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMADING FOR FURTHER PROCEEDINGS~ 14**

1  visit, she was diagnosed as "having worsened depression/anxiety" and prescribed a

2  new anti-depressant. AR 413. Subsequent visits show that she resumed Zoloft,

3  despite her previous concerns of side effects. AR 415. While some parts of the

4  record do show normal affect, AR 435, the ALJ appears to have ignored the

5  records within the relevant time period that do show Ms. Shipman's depression as

6  a legitimate impairment. This was in error.

7       The ALJ also relied on Ms. Shipman's own statements regarding her mental

8  limitations, despite otherwise finding her subjective statements not credible. AR

9  28. However, the Function Report on which the ALJ relied actually shows further

10  mental limitations that were not addressed. AR 259. While Ms. Shipman did not

11  self-identify problems with memory, understanding, following directions, or

12  getting along with others, she did report problems with completing tasks and

13  concentration, which support the earlier state agency findings of moderate

14  limitations in concentration, persistence, and pace. AR 79, 90-91, 259. An ALJ

15  may not "cherry pick" from a record to support the conclusion, but rather must

16  account for the context of the whole record. *See Reddick v. Chater*, 157 F.3d 715,

17  722-23 (9th Cir. 1998).

18       In addition, the ALJ did not fully evaluate Ms. Shipman's depression

19  because of her lack of consistent treatment. While Ms. Shipman did not

20  consistently take her medication, the record supports her contention that she had

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMADING FOR FURTHER PROCEEDINGS~ 15**

financial constraints that prevented her from doing so. AR 415-17, 481, 489.

Conditions should not be dismissed for failure to follow treatment because of the

inability to afford it. *See Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995);

*Smolen,* 90 F.2d at 1284 (While both cases found lack of ability to afford treatment

was not a valid reason to reject a claimant's credibility, the logic remains the same

here).

Because Ms. Shipman was found to have at least one severe impairment, this

case was not resolved at step two. Ms. Shipman does not assign error to the ALJ's

finding at step three. Thus, any error in the ALJ's finding at step two is harmless, if

all impairments, severe and non-severe, were considered in the determination Ms.

Shipman's residual functional capacity. *See Lewis v. Astrue*, 498 F.3d 909, 910

(9th Cir. 2007) (holding that a failure to consider an impairment in step two is

harmless error where the ALJ includes the limitations of that impairment in the

determination of the residual functional capacity). The record demonstrates this

was not done.

The Court finds that the ALJ improperly failed to properly account Ms.

Shipman's mental limitations in her residual functional capacity, and any error by

failing to consider these limitations severe at step two was not harmless. Remand is

appropriate.

1    **C. The ALJ did not err with regard to Ms. Shipman's credibility**

2    **determination.**

3        An ALJ engages in a two-step analysis to determine whether a claimant's

4    testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533

5    F.3d 1035, 1039 (9th Cir. 2008).  First, the claimant must produce objective

6    medical evidence of an underlying impairment or impairments that could

7    reasonably be expected to produce some degree of the symptoms alleged. *Id.*

8    Second, if the claimant meets this threshold, and there is no affirmative evidence

9    suggesting malingering, "the ALJ can reject the claimant's testimony about the

10   severity of [his] symptoms only by offering specific, clear, and convincing reasons

11   for doing so." *Id*.

12       In weighing a claimant's credibility, the ALJ may consider many factors,

13   including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

14   reputation for lying, prior inconsistent statements concerning the symptoms, and

15   other testimony by the claimant that appears less than candid; (2) unexplained or

16   inadequately explained failure to seek treatment or to follow a prescribed course of

17   treatment; and (3) the claimant's daily activities." *Smolen,* 80 F.3d at 1284. When

18   evidence reasonably supports either confirming or reversing the ALJ's decision, the

19   Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180

20   F.3d 1094, 1098 (9th Cir.1999). "General findings are insufficient:  rather the ALJ

1    must identify what testimony is not credible and what evidence undermines the

2    claimant's complaints." *Lester*, 81 F.3d at 834.

3        While work history may be one factor for an ALJ to consider in a credibility

4    determination, ALJ Payne provided multiple, valid reasons that are supported by

5    the record for a negative credibility determination. The ALJ detailed that the record

6    contained generally "unremarkable" findings that did not support the level of her

7    claimed impairment, including physical examinations and x-rays. AR 26. Further,

8    the ALJ cited to only conservative treatment, including no recommendation of

9    surgery. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative

10   treatment can be sufficient to discount testimony regarding severity of an

11   impairment).

12       Significantly, as ALJ Payne noted "no treating or examining physician has

13   ever reported any disabling limitations due to the claimant's various physical

14   impairments." AR 26. This is not a finding that Ms. Shipman challenges. Rather,

15   she alleges that her strong work history should have been considered in this

16   determination. The Court finds no authority for this to be reversible error,

17   particularly in the Ninth Circuit. The ALJ's credibility determination is legally

18   sufficient and supported by the record.

19   //

20   //

**D. Remedy**

The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are necessary for a proper determination to be made.

On remand, the ALJ will re-evaluate the effect of Ms. Shipman's mental limitations in calculating her residual functional capacity. The resulting residual functional capacity shall be matched against her past relevant work experience, consulting a vocational expert if needed, and if it is found Ms. Shipman cannot perform her past relevant work, taking into account all limitations in her residual functional capacity, the ALJ will proceed to step five.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence or free of legal error. Accordingly, **IT IS ORDERED:**

//

//

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 18,** is **DENIED.**

3.  The District Court Executive is directed to enter judgment in favor of Plaintiff.

4. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 13th day of February, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMADING FOR FURTHER PROCEEDINGS~ 20**